**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLINT PETTY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALEN CORPORATION,<br><br>Defendants. | Case No. 3-26-CV-01056-BAS-MMP<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Clint Petty ("Plaintiff") brings this action on behalf of Plaintiff, and all others similarly situated, against Alen Corporation ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of Plaintiff's counsel and based upon information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is an action arising from the false and misleading representations that Defendant made for years about its BreatheSmart 45i HEPA and BreatheSmart FLEX HEPA air purifiers (the "Air Purifiers")[1], along with their respective replacement filters (collectively, the "Products").

2. Specifically, Defendant represented that the Air Purifiers were equipped with High Efficiency Particulate Air (HEPA) filters when in fact they were not.

3. Independent testing by Plaintiff's counsel has shown that the filters used in the Air Purifiers and the replacement filters do not meet HEPA standards.

4. Reasonable consumers have had no opportunity to find this out for themselves because they cannot conduct HEPA standard testing.

5. Defendant knew this, but continued hocking its wares, making a killing selling the Air Purifiers *and* replacement filters since the outset of the COVID-19 pandemic. Defendant sold its Products through Amazon.com, its own website, and retail stores.

6. Defendant has profited greatly from the explosion in the air purifier market brought about by the COVID-19 pandemic and yearly "once-in-a-lifetime" wildfires that have ravaged the United States. Consumers are rightfully concerned about maintaining indoor spaces that are free of harmful pathogens and

[1] The Air Purifiers both use the same advertised "HEPA" filter. Accordingly, the Products are substantially similar for purposes of this litigation.

contaminants. As a result, a large portion of Defendant's profits are attributable to its false HEPA filtration claims.

7. But for Defendant's HEPA claims, the fair value of its Air Purifiers would have been substantially lower (i.e., their market price would have been closer to non-HEPA air purifier, which sell at a discount compared to air purifiers with HEPA filters). Put differently, Defendant's HEPA misrepresentations allowed it to overcharge consumers in the amount of the HEPA-related price premium – assuming there would be a market for Defendant's non-HEPA filters at all.

8. As such, Defendant's false and misleading representations induced reasonable consumers like Plaintiff into purchasing the Products. Had Plaintiff and all other similarly situated consumers known that – contrary to Defendant's knowing representations – the Products did not have HEPA filters, they would have paid less for the Products or not purchased them at all.

9. Plaintiff now seeks a return of the HEPA-related premiums that Defendant charged for its Products, on behalf of the Plaintiff and other similarly situated purchasers. Plaintiff asserts claims on behalf of Plaintiff and all other similarly situated purchasers of Defendant's Products for: (i) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (ii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (iii) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; (iv) fraud; (v) unjust enrichment; and (vi) breach of express warranty.

## **PARTIES**

10. Plaintiff Clint Petty is a citizen of California, and resides in the city of San Diego, CA. Plaintiff purchased an Alen Air BreatheSmart 45i on November 27, 2022, for $318.99 and a replacement filter on May 16, 2024, for $81.09 – both on Defendant's website. Plaintiff reviewed and relied on Defendant's warranties and representations about the Product's HEPA-grade air filter prior to purchasing the

Product. Plaintiff reasonably relied on Defendant's representations and believed that the Air Purifier came equipped with a HEPA filter. Had Defendant not warranted and represented that the Product had a HEPA filter, Plaintiff would not have purchased the Product or would have paid substantially less for it. Specifically, Plaintiff reviewed and relied upon the name of the Product: "Alen BreatheSmart 45i **True HEPA** Air Purifier" that Defendant displayed on its website store page.[2]

11. Defendant Alen Company Corporation ("Alen") is a Texas company with headquarters in Austin, Texas. Defendant Alen manufactures, distributes, advertises and sells the Products.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed Class; (b) some members of the proposed Class have a different citizenship from the Defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate. *See* 28 U.S.C. § 1332(d)(2) and (6).

13. This Court has personal jurisdiction over Defendant because it markets and sells the Products in California.

14. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant transacts significant business within this District; at least one Plaintiff resides within this District; and a substantial part of the events giving rise to at least one of the Plaintiff's claims took place within this District.

---

[2] *See* https://web.archive.org/web/20221127200713/https://alen.com/products/alen-breathesmart-45i-air-purifier?variant=13965937213507 (showing the BreatheSmart 45i webpage on the date that Plaintiff made his purchase).

## FACTUAL ALLEGATIONS

### A. Air Purifiers and the Air-Purifier Market

15. The Environmental Protection Agency estimates that "about 67 million tons of pollution were emitted into the atmosphere in the United States" in 2021 alone.0F[3] This pollution comes at great cost to human health: "[p]oor air quality is responsible for an estimated 100,000 premature deaths in the United States each year." Exposure to air particulates has also been linked to symptoms of depression, cognitive decline, and increased feelings of anxiety.

16. Air pollution can also be a visceral reminder of human-driven climate change: the smoke from wildfires that have raged across both coasts of the United States since 2020 has quite literally blocked out the sun and forced millions of people indoors. For many, the smoke has exacerbated health conditions such as asthma or emphysema.

17. Concern about air quality skyrocketed in 2020, however, as wildfires intensified, and the airborne COVID-19 virus shut down the globe.

18. As expected, consumer concern over airborne contaminants has helped the air-purifier market explode to $18.01 billion with expected growth to $25.26 billion in 2030.1F[4] "[T]he COVID-19 pandemic has increased the demand for air purifiers, with the growing awareness of COVID-19 associated respiratory ailments and the rising need to curb cross-contamination. Factors such as increasing airborne

---

[3] Air Quality- National Summary, Environmental Protection Agency (2023) https://www.epa.gov/air-trends/air-quality-national-summary#:~:text=Emissions%20of%20air%20pollutants%20continue,atmosphere%20in%20the%20United%20States. (last visited September 16, 2025).

[4] Research and Markets, *Air Purifier Market – Growth, Trends, COVID-19 Impact, and Forecasts (2022–2027)*, WWW.RESEARCHANDMARKETS.COM, https://www.researchandmarkets.com/reports/4987153/air-purifier-market-growth-trends-covid-19 (last visited September 15, 2025).

diseases and growing health consciousness among consumers are driving the market."2F[5]

19. Air purifiers come in various forms. Among the most effective purifiers are those with HEPA filters. HEPA, as defined above, is an acronym for "High Efficiency Particulate Air." HEPA filters are strictly designed and must adhere to certain specifications to be designated as HEPA.

20. According to the Centers for Disease Control and Prevention (CDC), HEPA filters "are the most efficient filters on the market for trapping particles that people exhale when breathing, talking, singing, coughing, and sneezing."4F[6]

21. Specifically, a HEPA filter is a type of pleated mechanical filter that typically consists of sheets of randomly arranged fiberglass or plastic fibers held in an accordion shape by aluminum separators. To be called a HEPA filter, the filter must capture at least 99.97% of dust, pollen, mold, bacteria, and any airborne particles with sizes ranging from 0.1 to 0.3 microns.3F[7] Under the governing HEPA industry standards promulgated by the Institute of Environmental Sciences and Technology ("IEST"), including IEST-RP-CC001 and related HEPA qualification protocols, a filter may not be advertised, marketed, or sold as "HEPA" unless the specific filter placed into commerce has been tested and verified to meet HEPA performance requirements. HEPA designation is not satisfied by historical design

---

[5] Research and Markets, Air Purifier Market Outlook, 2028
https://www.researchandmarkets.com/reports/5775014/air-purifier-market-outlook?srsltid=AfmBOopv6TMadRLUaM7wM00PNV-B6uxCfDNLizzPo60HoDjhCpg4DAE0
(last visited September 15, 2025).

[6] CENTER FOR DISEASE CONTROL AND PREVENTION, Improving Ventilation in Your https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/improving-ventilation-home.html (last accessed September 15, 2025).

[7] https://www.epa.gov/indoor-air-quality-iaq/what-hepa-filter' (last visited September 16, 2025).

testing, prototype testing, or batch sampling alone. Each filter offered for sale as "HEPA" must itself be tested and verified to meet HEPA requirements.

22. The reason why consumers may care that the air purifier they purchase meets the HEPA standard is self-evident. It offers near certain protection against the transmission of airborne pathogens in the home (if the purifier is given enough time to circulate the air), and it can also filter out pollution caused from events like wildfires, which are growing ever more frequent.

23. Consumers want the assurance that the HEPA standard provides, and they are willing to pay more for HEPA filters, i.e., consumers are willing to pay a premium for filters that meet the HEPA standard. Consumers are willing to pay this premium despite the fact most consumers do not know the highly technical testing protocols and performance figures which a filter must meet to qualify as HEPA. Indeed, consumers do not need to know this information to assign value to HEPA filters. Consumers generally understand that HEPA is an industry regulated term and believe HEPA filters are the best in the market, despite not knowing precisely what HEPA means or what performance figures a filter must meet to qualify as HEPA. The term HEPA is alone sufficient to induce reasonable consumers to pay a premium.

24. Being able to make a "HEPA" claim is thus a huge boon for manufacturers, and they know it. The HEPA standard claim is a signal to consumers that the product they are purchasing has been constructed to exacting standards and is able to provide superlative levels of filtration.

25. The materiality to consumers of HEPA representations is further confirmed by enforcement actions taken by regulators including the Federal Trade Commission, which has, among other things, entered into Consent Decrees with manufacturers of air purifiers for claims made about the efficacy of their HEPA

purifiers and filters. *See, e.g., In the Matter of Honeywell,* FTC File No. 962-3154.5F[8]

**B. Defendant's Products and Advertising**

26. At issue in this action are the Alen BreatheSmart 45i HEPA and BreatheSmart FLEX HEPA air purifiers, and all other substantially similar air purifiers which use the same filter as the one provided with the Product.




**Figure 1 – The BreatheSmart 45i Amazon Page**

[8] *Available at https://www.ftc.gov/legal-library/browse/cases-proceedings/962-3154-honeywell-inc-matter*



## About this item

- HEPA Pure Filter: Eliminates 99.9% of pollutants as small as 0.1 micron so you can breathe easy. Perfect for bedrooms, living rooms and home offices
- Sleep Enhancing: The BreatheSmart 45i is proven by SleepScore Labs to enhance sleep according to a peer study. Its ultra-quiet operation emits pink noise, optimizing lower octave frequencies, and ensuring a restful night
- Efficient Coverage: The BreatheSmart 45i quietly and efficiently circulates air up to 1900 sq. ft. every hour. Perfect for large bedrooms, living rooms, and dining rooms ensuring clean, fresh air throughout your space
- Engineered to Perform: Alen air purifiers offer superior performance through the combination of a powerful fan, quiet motor, and advanced filtration. Medical-grade filters capture particles as small as 0.1 micron
- Intelligent Design: SmartSensor technology adjusts fan speed based on air quality, with color-coded feedback. Monitor air purity easily with this home essential

**Figure 2 – BreatheSmart 45i Amazon.com Listing**[9]

27. Defendant crafted common false and misleading HEPA representations on its advertising for the 45i.

28. For instance, Defendant made the following express representations in the advertising for the BreatheSmart 45i (Figures 1 and 2):

(a) Equipped with a "pure" and "medical grade" HEPA filter

(b) "Eliminates" 99.9% of pollutants as small as .1 microns "so you can breathe easy"

29. Defendant made similar representations about the BreatheSmart 45i on its website, including that the Product was "True HEPA" and came equipped with "True HEPA 13, medical grade filters" which "remove 99.9%" of particles "down to 0.1 microns." *See supra* fn. 2.

30. Accordingly, the Defendant's representations regarding the Products were identical between Amazon.com and its own website.

---

[9] https://www.amazon.com/Alen-Purifier-BreatheSmart-Filter-Large/dp/B0FPD3RTJQ?th=1

31. Defendant made similar claims and representations on the BreatheSmart FLEX product page:




**Figure 3 – BreatheSmart FLEX Amazon Page**

32. Crucially, both Products use the same "HEPA" filter:




**Figure 4 – The Filter Used in Both Air Purifiers**

33. In reality, Defendant did not test or verify each production filter sold to Plaintiff and the Class for compliance with industry standards before advertising and selling the filters as "HEPA." Moreover, Plaintiff is informed and believes that Defendant did not conduct any industry standard testing that is required to make HEPA claims for the Products.

### C. Defendant's Products Are Tested And Fail To Meet HEPA Standards

34. As part of their investigation into the Products, Plaintiff's counsel commissioned a highly reputable and independent American laboratory to conduct testing on the Products. The results of the testing prove that Defendant's Products' filters are not HEPA-grade.

35. The lab chosen by Plaintiff's counsel is often used by companies to validate their filters and is an industry leader in the rigorous and accurate testing of HEPA filters. The lab is certified by ANAB/ANSI, a non-governmental organization that provides accreditation services and training to public and private-sector organizations. Moreover, the lab is well known for their stringent adherence to the various HEPA testing protocols set forth by the European Union, the International Standards Organization, and the United States.

36. The testing was conducted in accordance with IEST-RP-CC001.7 (IEST), which is the protocol used in America to verify that a filter is HEPA-grade. The test evaluates a filter's ability to filter out fine particles.

37. To be classified as a HEPA filter under the IEST, the filter must have a filtration efficiency of <u>at least</u> 99.97% for <u>all</u> particle sizes. Typically, particles ranging in size down to 0.1 microns are used in testing.

38. When the Air Purifiers' filter was tested under the IEST standard the results were stunning. The filter did not remove 99.9% of particles at 0.1 microns. In fact, they do not even qualify as HEPA-grade because it failed to remove 99.97% of particles at 0.3 microns.

39. Defendant's misrepresentations occurred on the Products' Amazon product pages, its own website, and on the product packaging identifying the filters as "HEPA," and were made continuously during at least 2022–2025. The representations were false because the filters being sold failed to meet the filtration efficiency requirements for HEPA classification under industry HEPA standards at the time of sale. Plaintiff is informed and believes that Defendant did not possess any contemporaneous testing demonstrating that the filters being sold achieved ≥99.97% efficiency at the most penetrating particle size as required by recognized HEPA standards, including IEST-RP-CC001, EN 1822, and ISO 29463. Defendant nevertheless marketed the Products as "HEPA" to capture the HEPA price premium.s

40. IBy falsely claiming that its Air Purifiers had a HEPA filter, and selling its replacement filters as HEPA, Defendant was able to overcharge Plaintiff and the putative class members in the amount of a HEPA-related premium associated with those claims.

41. Defendant's HEPA claims appeared on the webpages where its Products were sold and on primary packaging. Accordingly, those claims were seen by all purchasers of the Air Purifiers and replacement filters.

42. Defendant's HEPA claims misled reasonable consumers. Alen is one of the nation's leading air-purifier manufacturers, so consumers would reasonably believe Defendant's HEPA claims. Moreover, consumers do not and cannot typically test the accuracy of a HEPA claim before purchasing an air purifier, and Defendant's HEPA claims were expressly false, not impliedly false.

43. If Defendant had been truthful in its representations about the Products (i.e., that they were not HEPA grade), then the market price of those purifiers and filters would have been lower.

44. Accordingly, Plaintiff and the proposed Class paid for Defendant's Products at artificially inflated prices.

## CLASS ALLEGATIONS

45. ***Class Definition***. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of himself and all other similarly situated consumers, and seeks to represent classes defined as:

> All natural persons Nationwide who purchased Defendant's Air Purifiers or replacement filters during the applicable statutory period (the "Class").
>
> All natural persons who purchased an Air Purifiers or replacement filters while in California during the applicable statutory period (the "California Class").

46. Excluded from the classes are governmental entities; Defendant; and Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

47. Plaintiff reserves the right to modify or expand the definition of the classes to seek recovery on behalf of additional persons as facts are learned in further investigation and discovery.

48. ***Numerosity.*** Members of the classes are so numerous that their individual joinder herein is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery of Defendant's records. Class members may be notified of the pendency of this action by mail, email, publication, and/or other media, including social media.

49. ***Commonality and Predominance***. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to:

a. Whether the Products are in fact HEPA-grade;

b. Whether Defendant's express representations about the capability of the Products included false and/or misleading statements and/or omissions;

c. Whether Defendant knowingly made false HEPA claims about the Products;

d. Whether Defendant's representations were material;

e. Whether an objectively reasonable consumer would have been misled by Defendant's HEPA claims; and

f. Whether Defendant's HEPA claims allowed it to charge more for the Products than it otherwise could have.

50. ***Typicality.*** Plaintiff's claims are typical of the claims of the proposed classes because Plaintiff, like all members of the classes, was induced by Defendant's false and misleading warranties to purchase Defendant's Products without knowing that the Defendant's claims about the Products' filter were false and misleading. The representative Plaintiff, like all members of the classes, has been damaged by Defendant's misconduct in the very same way as the members of the classes. Further, the factual bases of Defendant's misconduct are common to all members of the classes and represent a common thread of misconduct resulting in injury to all members of the classes.

51. ***Adequacy***. Plaintiff is an adequate representative of the classes Plaintiff seeks to represent because Plaintiff's interests do not conflict with the interests of the members of the classes; Plaintiff has retained counsel competent and experienced in prosecuting class actions; and Plaintiff intends to prosecute this action vigorously. The interests of the members of the classes will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

52. ***Superiority***. A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the classes. Each

individual member of the classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also represents a potential for inconsistent or contradictory judgments. By contrast, the class-action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violations of California's Unfair Competition Law ("UCL") Business & Professions Code § 17200, *et seq.*

53. Plaintiff hereby incorporates by reference the allegations contained in all proceeding paragraphs of this complaint.

54. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant.

55. This claim is brought under the laws of California.

56. Defendant violated California's UCL by engaging in unlawful, fraudulent, and unfair conduct (*i.e.*, violating each of the three prongs of the UCL).

***The Unlawful Prong***

57. Defendant engaged in unlawful conduct by violating the CLRA and FAL as referenced herein.

***The Fraudulent Prong***

58. As alleged in detail above, Defendant misrepresented material facts about its Products, including by misrepresenting to consumers that the Products had "HEPA" filters, despite knowing that they did not.

59. Defendant, as manufacturer, marketer, licensor, and seller of the Products, was in a position to know (and did know) the true quality and capability of its Products but affirmatively warranted that the Products had a greater purifying ability than they actually did.

60. As a result of these false and misleading practices, Defendant induced Plaintiff and the members of the California Class to purchase the Products that Plaintiff and the California Class members would not have purchased, or would have paid substantially less for, had Defendant been truthful about the quality and capability of their Products.

***The Unfair Prong***

61. Defendant's conduct was unfair because, by claiming that its Products were equipped with HEPA filters, Defendant deceived consumers into believing that the Products' filters and replacement filters were HEPA-grade — which the general public views as the best or highest grade of filter available to lay-consumers — even though they are not. This is unfair because it led Plaintiff and the members of the California Class to purchase the Products, when they otherwise would not have, or would have paid substantially less for, had they not been advertised as "HEPA." Defendant's misleading practice was also unfair because it gave Defendant an advantage over competitors to the extent that Defendant's Air Purifiers are among the best-selling air purifiers in the marketplace, doing thousands of dollars in sales per month, and Defendant's superior position in the market can be attributed to its false and misleading HEPA claims.

62. The FTC has determined that false representations regarding the efficacy of HEPA air purifiers and filters constitute an unfair and deceptive trade practice.

63. Plaintiff and the California Class members could not have reasonably avoided the injury. Only Defendant was aware that their Air Purifiers did not possess HEPA filters.

***

64. For all prongs, Defendant's false and misleading conduct was intended to induce reliance, and Plaintiff and members of the California Class saw, read, and reasonably relied on Defendant's false and misleading warranties about the filtration capabilities of their Air Purifiers and replacement filters. Defendant's deceptive, misleading, and unfair conduct was a substantial factor in Plaintiff and the California Class's purchasing decisions.

65. Defendant's misrepresentations were a substantial factor and proximately caused the damages and loss to Plaintiff and the members of the California Class.

66. There was no benefit to consumers or competition from falsely claiming that the Products were of a quality that they were not.

67. Plaintiff and the members of the California Class have suffered harm as a result of Defendant's violations of the UCL because they have incurred charges and/or paid monies they otherwise would not have incurred or paid had Defendant advertised its Products truthfully.

## COUNT II

### Violations of California's False Advertising Law ("FAL") Business & Professions Code § 17500, *et seq.*

68. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

69. Plaintiff brings this claim individually and on behalf of the members of the California Class.

70. This claim is brought under the laws of California.

71. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.,* makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any

statement, concerning . . . personal property or service, . . . or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

72. During the applicable statutory period, Defendant committed acts of false advertising, as defined by the FAL, by making false and misleading representations about their Products' filters being HEPA-grade to attract more purchasers than their Products would otherwise have received. Likewise, Defendant's false advertising induced consumers to purchase the Products or pay more for the Products than consumers otherwise would have.

73. Defendant knew or should have known, through the exercise of reasonable care, that its claims about its Products' HEPA-grade filters were untrue and misleading.

74. Defendant's actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

75. As a direct and proximate result of these acts, consumers have been and are being harmed, including Plaintiff and the members of the California Class. Plaintiff and the members of the California Class have suffered injury and actual out-of-pocket losses as a result of Defendant's FAL violation because: (a) Plaintiff, and the members of the California Class would not have purchased Defendant's Products or would have paid substantially less for the Products had Defendants not advertised them as "HEPA;" (b) Plaintiff and the members of the California Class paid an increased price for the Products based on this advertising; and (c) the Products did not confer the value they promised to confer because they did not actually contain HEPA filters. Plaintiff lacks an adequate remedy at law because Defendant continues to market and sell the Products as "HEPA," and monetary damages alone cannot prevent ongoing deception of consumers.

76. Plaintiff and the California Class are therefore entitled to: (a) full restitution of all monies paid to Defendant as a result of their deceptive practices; (b)

interest at the highest rate allowed by law; and (c) the payment of Plaintiff's attorneys' fees and costs.

**COUNT III**
**Violations of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***

77. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

78. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant.

79. This claim is brought under the law of California.

80. Defendants is a "person," as defined by Cal. Civ. Code § 1761(c).

81. Plaintiff and members of the California Class are "consumers," as defined by Cal. Civ. Code § 1761(d).

82. The Products purchased by Plaintiff and the California Class are "goods" as defined by Cal. Civ. Code § 1761(a).

83. The purchases by Plaintiff and the California Class constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

84. As alleged more fully above, Defendant has violated the CLRA by furnishing false and misleading statements about the quality and capabilities of its Products to attract and induce more consumers to purchase their Products than would have otherwise been induced and attracted to the Products without those false and misleading statements.

85. As a result of engaging in such conduct, Defendant has violated California Civ. Code §§ 1770(a)(5), (a)(7) and (a)(9).

86. Defendant's conduct was likely to deceive, and did deceive, Plaintiff, the members of the California Class, all of whom are reasonable consumers. Defendant knew or should have known through the exercise of reasonable care, that its claims about their Products' filtration capabilities were false and misleading.

87. Defendant's representations about their Products' HEPA filter were intended to induce reliance, and Plaintiff and the members of the California Class, read, and reasonably relied on the false and misleading affirmative representations when deciding to purchase Defendant's Products. Defendant's deceptive conduct was a substantial factor in Plaintiff's purchase decisions and the purchase decisions of the proposed Class.

88. Plaintiff and members of the California Class have suffered harm as a result of these violations of the CLRA because they incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

89. In compliance with the provisions of California Civil Code § 1782, Counsel for Plaintiff sent written notice to Defendant on January 14, 2026, informing Defendant of their intention to seek damages under California Civil Code § 1750. The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated." Defendant did not provide such relief. Accordingly, Plaintiff seeks money damages under the CLRA to the fullest extent permitted.

**COUNT IV**

**Fraud**

90. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

91. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendant under the laws of California states with materially similar laws.

92. As alleged in detail above, Defendant misrepresented material facts about the Products, including by misrepresenting to consumers that the Products had

HEPA filters, despite knowing failing to individually test each Product which is required for HEPA classification prior to sale.

93. Defendant was in a position to know (and did know) the true quality and capability of their Products, but it affirmatively warranted that the Products had HEPA filters, when in truth they did not. In fact, in addition to selling Products without the required individual HEPA testing, Plaintiff is informed and believes that Defendant knew through their own testing, or lack thereof, that their Products were not HEPA-grade, and were being falsely advertised as having HEPA filters.

94. Defendant's misrepresentations, upon which Plaintiff and the members of the Class relied, were intended to induce, and actually did induce, Plaintiff and the members of the Class to purchase the Products. Defendant induced Plaintiff and the members of the Class to purchase the Products that Plaintiff and the members of the Class would not have purchased, or would have paid substantially less for, had Defendant been truthful about the quality and capability of its Products.

95. Defendant's fraudulent actions caused damages to Plaintiff and the Class who are entitled to damages and other legal and equitable relief as a result.

**COUNT V**
**Unjust Enrichment**

96. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

97. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendant under the laws of California states with materially similar laws.

98. As alleged in detail above, Defendant misrepresented material facts about its Products, including by misrepresenting to consumers that the Products had HEPA filters, despite knowing that they did not.

99. Defendant was in a position to know the true quality and capability of its Products but affirmatively warranted that the Products had HEPA filters, when in truth they did not.

100. Substantial benefits have been conferred on Defendant by Plaintiff and the Class through the purchase of the Products. Defendant knowingly and willingly accepted and enjoyed these benefits.

101. Defendant either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Products would contain HEPA filters. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

102. Defendant's acceptance and retention of these benefits of the payments from Plaintiff and the Class under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the Class.

103. Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

**COUNT VI**
**Breach of Express Warranty**

104. Plaintiff hereby incorporate by reference the allegations contained in this Complaint.

105. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendant under the laws of California and states with materially similar laws.

106. As alleged in detail above, Defendants expressly warranted that the Products were 'HEPA' and met a '99.9%' filtration standard. These warranties were false at the time of sale because the specific filters sold to Plaintiff and the Class were never tested or verified to meet IEST-RP-CC001 standards, or other industry

standards, as required for a HEPA designation, and subsequent testing of temporally proximate units confirmed they failed to meet the warranted performance levels.

107. Defendant was in a position to know the true quality and capability of its Products but affirmatively warranted that the Products had HEPA filters, when in truth they did not.

108. Substantial benefits have been conferred on Defendant by Plaintiff and the Class through the purchase of the Products. Defendant knowingly and willingly accepted and enjoyed these benefits.

109. Pursuant to California Commercial Code § 2607(3)(A), Plaintiff provided Defendant with timely and adequate notice of breach of express warranty prior to filing this action. Specifically, on January 14, 2026, Plaintiff, through counsel, sent Defendant written notice via certified mail, return receipt requested, to Defendant's principal place of business, informing Defendant that its "HEPA" representations were false and that the Products failed to conform to the express warranties made at the time of sale.

110. The notice identified the specific Products purchased by Plaintiff, the dates of purchase, the representations at issue, and the nature of the breach, including that independent testing demonstrated the filters failed to meet HEPA performance standards. The notice demanded that Defendant cure the breach and provide appropriate relief, including reimbursement of the purchase price and any price premium paid.

111. Defendant received this notice but failed to cure the breach, provide reimbursement, or otherwise respond in a manner sufficient to resolve Plaintiff's warranty claims.

112. Accordingly, Plaintiff has satisfied all conditions precedent to bringing this action for breach of express warranty.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that the Court grant Plaintiff and all members of the proposed Class the following relief against Defendant:

(a) An order certifying the Classes and naming Plaintiff's attorneys as Class Counsel to represent the members of the Classes;

(b) An order declaring that Defendant's conduct violates the statutes and common law referenced herein;

(c) Compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(d) Prejudgment interest on all amounts awarded;

(e) Restitution and all other forms of equitable monetary relief;

(f) An order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(g) Granting such other and further relief as many be just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 24, 2026

**BURSOR & FISHER, P.A.**

By: *_/s/ L. Timothy Fisher_*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)

2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1. I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A. I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2. The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff Clint Petty resides in this District.

3. Plaintiff is a resident of San Diego, California.

4. Defendant Alen Corporation is a Texas company with its principal place of business in Austin, Texas.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on April 24, 2026, at Walnut Creek, California.

*/s/ L. Timothy Fisher*
L. Timothy Fisher