**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CLINT PETTY,

Plaintiff,

v.

ALEN CORPORATION,

Defendant.

Case No. 26-cv-1056-BAS-MMP

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS (ECF No. 14)**

Plaintiff Clint Petty brings a putative class action against Defendant Alen Corporation seeking relief under several California consumer protection statutes and common law causes of action, namely: (1) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (3) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (4) fraud; (5) unjust enrichment; and (6) breach of express warranty. (ECF No. 10, "First Amended Complaint" or "FAC.")

Presently before the Court is Defendant's motion to dismiss Plaintiff's First Amended Complaint for failure to state a claim. (ECF No. 14 ("Mot.").) Plaintiff filed an opposition (ECF No. 15 ("Opp'n")), but Defendant did not file a reply. The Court finds

Defendant's motion suitable for determination on the papers submitted. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons that follow, the Court **DENIES** the motion.

## I. BACKGROUND

This case centers around alleged misrepresentations made by Defendant to consumers regarding the quality and efficacy of its air purifiers.

Air purifiers on the market have differing levels of filtration efficiency. Those equipped with High Efficiency Particulate Air ("HEPA") filters are among the most effective air purifiers and must adhere to certain specifications in order to receive a HEPA designation. (FAC ¶ 19.) The CDC describes HEPA filters as "the most efficient filters on the market for trapping particles that people exhale when breathing, talking, singing, coughing, and sneezing." (*Id.* ¶ 20.) In order to properly be called a HEPA filter, the filter must capture at least 99.97% of dust, pollen, mold, bacteria, and any airborne particles with sizes ranging from 0.1 to 0.3 microns. (*Id.* ¶ 21.) Governing industry standards state that a filter cannot be advertised or sold as HEPA unless the specific filter placed into commerce has been tested and verified to meet HEPA requirements. (*Id.*) Each filter must itself be tested and verified to meet HEPA requirements. (*Id.*)

The HEPA label is potentially attractive to consumers seeking quality air filtration. Considering the high standard for labeling a filter as HEPA, consumers may desire to purchase a HEPA-grade filter for the protection it offers against pollution or other harmful airborne particles. (*Id.* ¶ 22.) It follows that consumers are willing to pay a premium for HEPA filters, despite not knowing precisely what HEPA may mean—the term alone ("High Efficiency Particulate Air" filter) may induce consumers to pay the premium for a HEPA filter. (*Id.* ¶ 23.)

Defendant Alen Corporation is a Texas corporation that manufactures, distributes, advertises, and sells air purifiers. (*Id.* ¶¶ 1, 11.) The products at issue in this case are Defendant's BreatheSmart 45i HEPA (the "45i Filter") and BreatheSmart FLEX HEPA (the "FLEX Filter") air purifiers and their shared replacement filter (collectively referred to as the "Products"). (*Id.* ¶ 1.)

Plaintiff is a California citizen who purchased a 45i Filter on November 27, 2022, for $318.99. (*Id.* ¶ 10.) Plaintiff later purchased a replacement filter on May 16, 2024, for $81.09. (*Id.*) Plaintiff made both purchases on Defendant's website. (*Id.*)

Plaintiff alleges that Defendant misrepresented its Products as HEPA-grade when, in fact, Defendant knew or should have known that its Products were not HEPA-grade. Specifically, Plaintiff alleges that Defendant made the following primary representations regarding its Products on both its own website and its Amazon.com product pages: (1) that the Products were "HEPA" filters; and (2) that those "HEPA" filters could remove 99.9% of particles down to 0.1 microns. (FAC ¶¶ 26–32.)[1]

In its Amazon.com advertisement of the 45i Filter, Defendant claims that the filter was equipped with a "pure" and "medical grade" HEPA filter and that it "[e]liminates" 99.9% of pollutants as small as 0.1 microns "so you can breathe easy." (*Id.* ¶ 28.) Defendant made substantially similar representations regarding the 45i Filter on its own website, namely: that the product was "True HEPA" and came with "True HEPA 13, medical grade filters," which "remove 99.9%" of particles "down to 0.1 microns." (*Id.* ¶ 29.)

With regard to the FLEX Filter, Plaintiff alleges that Defendant made similar representations. (*Id.* ¶ 31.) Specifically, the FLEX Filter is marketed on Amazon.com as a HEPA "[m]edical-grade filter" that "captures 99.9% of particles as small as 0.1 micron[s]." (*Id.*) Both the FLEX and 45i Filters use the same replacement filter, marketed as a "[m]edical-grade H13 HEPA Air Filter." (*Id.* ¶ 32.)

Defendant allegedly did not test or verify its filters sold to the putative class for compliance with HEPA industry standards prior to selling them as "HEPA" filters. (*Id.* ¶ 33.) Defendant did not conduct any standard industry testing required to market its products as HEPA-grade. (*Id.*) Plaintiff's counsel commissioned an independent laboratory to test the Products, which indicated that the Products were not, in fact, HEPA-grade. (*Id.* ¶ 34.) The lab conducted testing in accordance with "IEST-RP-CC001.7" ("IEST"), the protocol

[1] Plaintiff also alleges that Defendant made at least the HEPA representation on the Products' packaging. (FAC ¶¶ 39, 41.)

evaluating a filter's ability to filter out fine particles used in the United States to verify that a filter is HEPA-grade. (*Id.* ¶ 36.) Under the IEST standard, a filter must have a filtration efficiency of at least 99.97% for all particle sizes to be classified as a HEPA filter. (*Id.* ¶ 37.) The independent laboratory tested the filter at issue in this case[2] under the IEST standard. (*Id.* ¶ 38.) Results indicated that the filter failed to remove 99.9% of particles at 0.1 microns, as advertised, and separately failed to remove 99.97% of particles at 0.3 microns (a requirement for labeling a filter as "HEPA" under the IEST standard). (*Id.*)

Despite its non-compliance with HEPA industry standards for each filter sold, Defendant nevertheless represented its products as HEPA on its own website, its Amazon product pages, and on its product packaging for at least three years between 2022–2025. (*Id.* ¶ 39.) Defendant did not possess contemporaneous testing that verified its claims under the relevant HEPA standards but nevertheless marketed its Products as HEPA-grade. (*Id.*) As a result, Defendant was able to charge the putative class a premium for HEPA-grade products. (*Id.* ¶¶ 23, 40.) If Defendant had been truthful regarding the Products' true quality, then the Products' market price would have been lower. (*Id.* ¶ 43.)

Plaintiff ultimately seeks to certify two classes to recover HEPA-related premiums he contends were wrongfully paid to Defendant, a Nationwide Class and a California Class. The Nationwide Class is defined as "[a]ll natural persons Nationwide who purchased Defendant's Air Purifiers or replacement filters during the applicable statutory period." (*Id.* ¶ 45.) The California Class is defined as "[a]ll natural persons who purchased an [sic] Air Purifiers or replacement filters while in California during the applicable statutory period." (*Id.*)

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests that

---

[2] Both the 45i and FLEX Filters use the same filter. (FAC ¶ 32.)

standard by seeking dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While legal conclusions may provide the framework of a complaint, "they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"—in other words, enough to render the claim plausible. *Id*. at 678 (citing *Twombly*, 550 U.S. at 570). In ruling on a motion to dismiss, the court accepts the complaint's factual allegations as true and construes the pleadings in the light most favorable to the nonmoving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). The court may not look beyond the complaint. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

If dismissal is warranted, the court considers whether to grant leave to amend. Leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). At the same time, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc*., 656 F.3d 1034, 1041 (9th Cir. 2011). "[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Metzler Inv. GMBH v. Corinthian Colls., Inc*., 540 F.3d 1049, 1072 (9th Cir. 2008) (quotation omitted).

**1. Heightened Pleading Standard for Fraud**

Where a plaintiff alleges fraud, he must "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just

deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation modified). Allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). Rule 9(b) applies in cases regardless of the basis for subject matter jurisdiction or whether the substantive law in question is derived from state or federal authority. *See Kearns*, 567 F.3d at 1125 (holding that Rule 9(b) applies to claims brought under California consumer protection statutes).

**B. Motion to Strike**

Under Rule 12(f), courts may strike from a pleading an insufficient defense or redundant, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted). Motions to strike "are generally regarded with disfavor." *L.A. Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903, 931 (C.D. Cal. 2023) (citation omitted). "If there is any doubt whether the challenged matter might bear on an issue in the litigation, the motion to strike should be denied, and assessment of the sufficiency of the allegations [should be] left for adjudication on the merits." *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015) (citation modified).

"With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citation omitted). Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court. *See Whittlestone*, 618 F.3d at 973.

## III. ANALYSIS

### A. Fraud (Count IV)

The Court analyzes Plaintiff's fraud claim first, as it lies at the heart of the dispute between the parties. To state a cause of action for fraud, a plaintiff must plead: (1) a misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). Claims under consumer protection statutes and common law fraud claims are "substantively distinct" in that for a statutory claim, "a plaintiff need merely allege that 'members of the public are likely to be deceived,'" while "a common law fraud deception must be actually false." *In re Actimmune Mktg. Litig.*, No. C08-02376 MHP, 2009 WL 3740648, at *7 (N.D. Cal. Nov. 6, 2009) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)), *aff'd*, 464 F. App'x 651 (9th Cir. 2011). Allegations of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

Plaintiff has plausibly alleged his cause of action for fraud with the requisite specificity under Rule 9(b).[3] Defendant argues that Plaintiff pleads only "broad and conclusory allegations of the alleged fraud." (Mot. at 5.) Defendant contends that Plaintiff's fraud claims "really distill down to a single claim that at unknown times and places Alen made incorrect statements that some air purifiers it sells have filters that meet HEPA standards when they do not and that Plaintiff, and others, purchased said air purifiers due to these statements." (*Id.* at 5–6.) Defendant further argues that its distillation of Plaintiff's claims is "vague" because Plaintiff does not "provide the details of the specific statements

---

[3] Defendant argues that a heightened Rule 9(b) pleading standard applies to Plaintiff's entire First Amended Complaint. (Mot. at 6–9.) Plaintiff in his opposition does not appear to contest this proposition and instead argues that the FAC meets the requisite level of specificity. (Opp'n at 3–5.) The Court assumes, without deciding, that the heightened pleading standard of Rule 9(b) applies to the entire FAC for the purposes of this motion. In any event, for the reasons stated in Section III, the FAC meets the requisite specificity of Rule 9(b).

made, when they were made, who made them, to whom they were made, [or] their specific content[.]" (*Id.* at 6.)

Defendant's contentions do not match up with what Plaintiff pleaded. The FAC is detailed and gives Defendant a meaningful opportunity to evaluate the charges made against it. Specifically, Plaintiff states that he "purchased an Alen Air BreatheSmart 45i on November 27, 2022, for $318.99 and a replacement filter on May 16, 2024, for $81.09—both on Defendant's website." (FAC ¶ 10.) He further alleges that he reviewed and reasonably relied on Defendant's representations about its filters' HEPA-grade quality prior to making a purchase. (*Id.*) Plaintiff directly quotes representations from Defendant's websites marketing the Products, including that Defendant's Products came equipped with "medical-grade" HEPA filters which remove 99.9% of particles down to 0.1 microns. (*Id.* ¶¶ 26–30.) The FAC also includes reproductions of representations made on Defendant's Amazon.com webpages marketing the 45i and FLEX Filters. (*Id.* ¶¶ 26–32.)[4] Plaintiff further alleges that both the 45i and FLEX Filters use the same replacement filter, which is also marketed as "[m]edical-grade" and "HEPA." (*Id.* ¶ 32.) The representations occurred through three different media: Defendant's website, Defendant's Amazon product pages, and on the Products' primary packaging, between at least 2022–2025. (*Id.* ¶ 39.) The Court also notes that Plaintiff's counsel took the step of hiring an independent laboratory to test the filter at issue under standard protocols used to verify whether a filter is, in fact, HEPA-grade. (*Id.* ¶¶ 34–36.) The laboratory's findings indicated that Defendant's filters did not remove 99.9% of particles at 0.1 microns, as represented, and separately did not qualify under relevant industry standards that set the threshold for HEPA

---

[4] For example, in Figures 1–2 (marketing the 45i Filter), Defendant titles the product "Alen Air Purifier BreatheSmart 45i HEPA with Pure Filter" and represents that its "HEPA Pure Filter . . . [e]liminates 99.9% of pollutants as small as 0.1 micron[s] so you can breathe easy." (FAC ¶ 26.) The Amazon webpage also represents the 45i Filter as "[m]edical-grade" that can "capture particles as small as 0.1 micron[s]." (*Id.*)

Defendant makes similar representations regarding the FLEX Filter on Amazon.com. Defendant marketed the FLEX Filter as "Alen Air Purifier BreatheSmart Flex HEPA with Pure Filter" and represented that the product has a "[m]edical-grade filter [that] captures 99.9% of particles as small as 0.1 micron[s]." (*See id.* ¶ 31.)

designation. (*Id.* ¶¶ 36–38.) By representing its filters as HEPA-grade when they were allegedly not, Defendant was able to charge a premium for products that would have otherwise sold for a lower price on the market. (*Id.* ¶¶ 40–43.)

Accepting the well-pleaded allegations as true and viewing them in the light most favorable to Plaintiff as the nonmovant, the Court finds that Plaintiff has plausibly stated a cause of action for fraud. Plaintiff has asserted the "who, what, when, where, and how" of the misconduct he alleges took place. *Kearns*, 567 F.3d at 1124 (citation omitted). Defendant argues that Plaintiff pursues a fraud claim based on "conclusions" and that he fails to provide specifics tying the alleged misrepresentations to acts taken by Plaintiff in reliance upon those representations. (Mot. at 6.) Contrary to Defendant's arguments, Plaintiff pleads fraud with specificity as to: who made the misrepresentations (Defendant) (FAC ¶¶ 26–33); what misrepresentations were made (Defendant's filters' HEPA status and filtration efficiency) (*id.*); when Defendant made the misrepresentations (at least between 2022–2025) (*id.* ¶ 39); where Defendant made its representations (on its own website, its Amazon webpages marketing the Products, and on the Products' primary packaging) (*id.* ¶¶ 39, 41); and how Defendant was able to charge a premium for its Products (it marketed its Products as HEPA-grade when it knew or should have known they were not). (*Id.* ¶¶ 40, 73, 86, 93.) Plaintiff goes on to state that Defendant made these misrepresentations to, and misled, both himself and the relevant class of consumers (*id.* ¶¶ 10, 41–42.) He pleads whether he relied on those misrepresentations (*id.* ¶¶ 10, 64, 87, 94); which products he purchased and how much he paid for them (*id.* ¶ 10); and that the class would have either paid less for the Products or not purchased any at all. (*Id.* ¶¶ 8, 10, 60–61, 75, 94.) Plaintiff's counsel later retained an independent laboratory to test the veracity of Defendant's HEPA representations, which suggest that the representations were indeed false. Altogether, the Court cannot conclude, as Defendant asserts, that Plaintiff pleaded

broad or conclusory allegations and instead finds that Plaintiff pleads his fraud allegations with sufficient specificity.[5]

The Court finds that Plaintiff sufficiently pleads the remaining elements of fraud. Plaintiff alleges that Defendant acted with the requisite intent to induce reliance and knowledge of the alleged fraud, which can be pleaded generally under the Federal Rules of Civil Procedure. (FAC ¶¶ 64, 73, 86–87, 94, 101); Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *see also Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge."). The reasonableness or justifiability of Plaintiff's alleged reliance is a question of fact unsuitable for resolution on a motion to dismiss under the present circumstances. *See Flynn v. Wells Fargo Bank, N.A.*, No. 19-cv-00116-WBS-KJN, 2019 WL 4077614, at *3 (E.D. Cal. Aug. 29, 2019) (denying motion to dismiss fraud claim and holding that "[t]he reasonableness or justifiability of plaintiff's alleged reliance is a question of fact not appropriately addressed at the motion to dismiss stage."); *Good Times Restaurants, LLC v. Shindig Hosp. Grp., LLC*, No. 21-cv-07688-AGT, 2022 WL 16856106, at *3 (N.D. Cal. Nov. 10, 2022) (same); *see also Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995) (discussing common law fraud and holding that "[e]xcept in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact" (citations omitted)). Lastly, Plaintiff pleads resulting

---

[5] The Court also finds that the purposes behind Rule 9(b) are satisfied here. The Ninth Circuit has explained that Rule 9(b) serves three purposes: (1) providing defendants with adequate notice to allow them to defend against charges of fraud and deter pretextual complaints; (2) protecting a defendant's reputation that may be tarnished by a fraud charge; and (3) prohibiting plaintiffs from unilaterally imposing "enormous social and economic costs" upon society, the court, and the parties "absent some factual basis." *Kearns*, 567 F.3d at 1125 (citations omitted). Rule 9 in part serves to protect defendants against frivolous or unfounded charges of fraud. *See United States v. Pac. Toxicology Lab'ys*, No. CV 19-2900 MWF (MRWX), 2022 WL 17367186, at *1 (C.D. Cal. Sept. 28, 2022) ("[O]ne purpose of Rule 9(b) is to prevent fishing expeditions." (citation omitted)). The Court concludes that the detailed factual allegations of the FAC are a far cry from the proverbial "fishing expedition" and provide Defendant with adequate notice of the fraud charge against it, in satisfaction of the purposes behind Rule 9(b).

damage as a result of paying HEPA-related premiums that Defendant was not entitled to. (FAC ¶¶ 8–9.)

Taken together, these allegations satisfy the heightened pleading standard of Rule 9(b).[6] Thus, the Court **DENIES** Defendant's motion to dismiss Count IV.

**B. UCL, FAL, and CLRA (Counts I, II & III)**

Plaintiff's first three causes of action arise from a trio of California consumer protection statutes: the UCL, the FAL, and the CLRA. Because all of these claims are governed by the same "reasonable consumer" standard, the Court considers them together. *Tarvin v. Olly Pub. Benefit Corp.*, 756 F. Supp. 3d 797, 803 (C.D. Cal. 2024) (considering UCL, FAL, and CLRA claims together under the reasonable consumer standard); *see also McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023).

Under the reasonable consumer standard, plaintiffs must "show that members of the public are likely to be deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citation modified). The California Supreme Court recognizes "that these laws prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.'" *Id.* (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). The standard "requires more than a mere possibility that [the product advertising] 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner,'" but rather "'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*,

---

[6] Defendant quibbles over Plaintiff's reproductions of its Amazon webpages and argues that, because Plaintiff himself did not make a purchase of its Products on Amazon, these screenshots are vague and conclusory because they do not purport to show a statement that Plaintiff relied on to make a purchase. (Mot. at 3.) The Court does not find this argument persuasive, for at least two reasons. First, Plaintiff quotes Defendant's website directly to show that it made similar representations regarding the HEPA label and filtration efficacy as it did on its Amazon site. (FAC ¶ 29.) Second, Plaintiff seeks to represent a class of people who similarly relied on Defendant's representations regarding its filters' HEPA quality and efficiency, regardless of where Defendant offered those representations. (*Id.* ¶¶ 41, 45.)

105 Cal. App. 4th 496, 508 (Cal. Ct. App. 2003)). The "touchstone" of the reasonable consumer standard is whether the product marketing has "a meaningful capacity to deceive consumers." *McGinity*, 69 F.4th at 1097. Whether a reasonable consumer may be deceived by product marketing "often raises questions of fact" and therefore it is "generally not appropriate for resolution on a motion to dismiss except in rare situations where the alleged violations of UCL, FAL, and CLRA are simply not plausible." *Tarvin*, 756 F. Supp. 3d at 803 (collecting cases) (citation modified).

The Court finds that this case does not present a "rare situation" where alleged violations of California consumer protection statutes should be resolved at the pleading stage. "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision" at the pleading stage. *Williams*, 552 F.3d at 938; *see, e.g.*, *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (Cal. Ct. App. 2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on demurrer." (citation modified)). As the Court found above, *see supra* Section III(A), Plaintiff has alleged the fraud undergirding his entire FAC with the requisite specificity. In sum, Defendant marketed its 45i and FLEX Filters (along with their shared replacement filter) as "HEPA-grade" across at least three media for at least three years when in fact those filters were not qualified to be labeled as HEPA, according to independent laboratory testing. A reasonable consumer, in light of general airborne pollutant concerns, may desire to purchase a HEPA-grade filter at a premium for its "near certain protection against the transmission of airborne pathogens in the home[.]" (FAC ¶¶ 22–23.) The Court credits Plaintiff's allegations that, while consumers may not know the "highly technical" protocols and standards required to achieve initial HEPA designation, consumers generally understand that "HEPA is an industry regulated term and believe HEPA filters are the best in the market[.]" (*Id.* ¶ 23.) The term "HEPA" alone may be sufficient to induce a reasonable consumer to pay a

premium. (*Id.*) It is also plausible that consumers would be drawn to Defendant's "99.9%" filtration efficiency representation. (*Id.* ¶¶ 26–29, 31.)

Taken as a whole, the FAC plausibly pleads the potential for a reasonable consumer to be deceived by Defendant's HEPA and filtration efficiency representations. The Court therefore declines to resolve the intensely factual questions surrounding the reasonable consumer standard at the pleading stage, and **DENIES** Defendant's motion to dismiss Counts I–III.[7]

### C. Motion to Strike Duplicative Claims (Counts V & VI)

Defendant's final argument is that Plaintiff's unjust enrichment and express warranty claims are duplicative of each other and therefore should be stricken. (Mot. at 9–10.) Defendant contends that the two claims at issue "address the same conduct and seek the same relief. Both allege that Defendant misrepresented facts about certain air purifier products causing Plaintiff and others to purchase said products at prices higher than they would pay absent the alleged misrepresentations." (*Id.* at 9.)

The Court declines to strike the unjust enrichment and express warranty claims as duplicative at this early juncture. It is not immediately evident that the claims are entirely duplicative of one another; rather, these claims are alternative theories of recovery potentially available to Plaintiff which should be fleshed out in discovery as opposed to being adjudicated at the pleading stage. In any event, the allegedly duplicative nature of two given claims is "not grounds for dismissal." *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). The availability of both Counts V and VI to Plaintiff is made clear in the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in

---

[7] Defendant argues that the unjust enrichment and breach of warranty claims (Counts V and VI, respectively) fail on the merits for the same reasons as Counts I–III. (Mot. at 8 ("Even Plaintiff's unjust enrichment and breach of warranty claims contain the same statements and basis [for fraud].")) Since the Court has found that Plaintiff plausibly pleads fraud with specificity, and because Defendant's arguments for dismissal of Counts V and VI center around Plaintiff's failure to plead fraud with specificity, (*id.*), the Court also denies the motion on the merits as to Counts V and VI.

a single count or defense or in separate ones.”). District courts in California largely agree that even duplicative claims may be asserted by a plaintiff in these circumstances. *See, e.g.*, *Fain v. Am. Honda Motor Co., Inc.*, No. CV 19-2945-MWF (PJWx), 2019 WL 8690214, at *10 (C.D. Cal. Dec. 19, 2019) (permitting duplicative claims to proceed to discovery); *Regalado v. Riverside Cnty.*, No. 20-1578 JGB (KKx), 2021 WL 945249, at *5 (C.D. Cal. Jan. 15, 2021) (agreeing with plaintiff that claims were not duplicative but observing that “even if these causes of action were in fact duplicative . . . that a claim is duplicative of or superfluous of other claims ‘is not grounds for dismissal.’” (quoting *Astiana*, 783 F.3d at 762)); *Zaragoza v. Apple Inc.*, No. 18-cv-06139-PJH, 2019 WL 1171161, at *8 (N.D. Cal. Mar. 13, 2019) (denying motion to dismiss quasi-contract claim for unjust enrichment to proceed even where it was potentially duplicative of “a contract claim . . . [that] was pled with respect to the warranties”). Whether the claims for unjust enrichment and breach of express warranty are duplicative or not, the law makes clear that Plaintiff may proceed with them for now.

Accordingly, the Court **DENIES** Defendant’s motion to strike Counts V and VI as duplicative.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant’s motion to dismiss (ECF No. 14) in its entirety.

**IT IS SO ORDERED.**

**DATED: September 15, 2026**



**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**